LUNSFORD DOLE PHILLIPS #4407
500 Ala Moana Blvd.; Ste. 7400
Honolulu, Hawaii 96813
Tel: (808)543-2055; Fax (808)543-2010
lunsfordp001@hawaii.rr.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RANDAL CHUNFAT<br>　　　Plaintiff,<br><br>　　vs.<br><br><br>HAWAII FAMILY HEALTH, INC.<br>　　　Defendant | CIVIL NO.<br><br><br>COMPLAINT;<br>SUMMONS |

## COMPLAINT

Plaintiff RANDAL CHUNFAT [hereinafter "Plaintiff"] through his undersigned counsel, avers and alleges:

1. This Court has original jurisdiction under 28 U.S.C. § 1331 because a federal question is raised herein, namely Plaintiff's alleged violation of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., and this Court has pendant jurisdiction over the alleged violation of Hawaii Revised Statutes Chapter § 489, prohibiting discrimination in public accommodations.

2. Venue lies in this Court because all events material hereto occurred within the District of Hawaii.

3. Plaintiff was and is a person with a disability being substantially limited in his mobility for a number of reasons, physical conditions that qualify him as disabled under federal and state law.

4. Defendant HAWAII FAMILY HEALTH, INC. ["Defendant"] does business in Hawaii as a domestic professional corporation, registered with the State of Hawaii Dept. of Commerce and Consumer Affairs' Business Registration Division as being engaged in health care provision. Defendant is a public accommodation, operating a place of public accommodation at 633 Ponahawai Street #102 in Hilo, County of Hawaii. Its principals are Aura Milar, Alicia Wilson and Michelle Mitchell.

5. Plaintiff pursued and exhausted all administrative relief through the State of Hawaii Civil Rights Commission.

6. This Complaint is timely filed.

## FACTS

7. On February 9, 2021, the Plaintiff took his wheelchair-bound, mentally-disabled mother to the Defendant's office for a scheduled appointment.

8. Plaintiff was assisted by his service animal, an American Pit Bull.

9. Plaintiff has owned his service dog for eight years.

10. Plaintiff's service dog performs numerous tasks to facilitate his daily life among other tasks: rising from the seated position, ambulating on his two artificial hips, and taking medication on time.

11. Plaintiff called the Defendant's office on the day of his mother's appointment to inform the Defendant that he was replacing his brother as their mother's companion and that he was going to be

accompanied by his service dog.  Defendant asked no questions about his service dog. The Defendant made no comments, imposed no conditions, and raised no objections about his service dog.

12. When the Plaintiff and mother arrived about 3:45 p.m. about fifteen minutes early for his mother's 4:00 p.m. scheduled appointment, they were checked in and left to wait in the reception area. Nothing was said or asked during that time about the Plaintiff's dog.

13. After waiting about thirty minutes an employee of Defendant told Plaintiff that it did not allowed dogs in the office.

14. Plaintiff explained that his dog was a service animal.  But the same Defendant employee insisted that his dog was not a service animal because of its size and breed.  She explained she and the staff had been researching service animal requirements online since he had arrived and were certain his dog did not meet the requirements because it was too big and didn't have an identifying vest.

15. Plaintiff informed that person that she was incorrect and reiterated that his dog was a qualified service animal.  He produced a written note from his now deceased doctor certifying it was a service animal.

16. After another fifteen minutes a different one of Defendant's employees came to the Plaintiff and told him the doctor could not treat his mother because he needed a power of attorney.  Plaintiff explained that because the nursing care home which was discharging his mother and which had arranged Defendant's services had required power of attorney documents from him and his brother, Plaintiff suggested she examine his mother's records.  She left and when she returned, she admitted she had found the necessary power of attorney.

17. By now nearly sixty minutes had passed since Plaintiff and her mother had arrived. Then one of Defendant's employees told Plaintiff he would have to reschedule his mother's appointment because it was too late for the doctor to see his mother on that day. Plaintiff was upset.

18. The Plaintiff called the Defendant first thing the next day to get an explanation why he and his mother had been denied service the day before. The Defendant's employee admitted they had misunderstood the service animal law and that it should not have kept them waiting until they were literally unserved and constructively denied service.

19. Plaintiff lives in Hilo not far from the Defendant's office, has a number of his own on-going medical conditions requiring medical care and has responsibilities for his mother's care. He will definitely include the Defendant in his future medical plans if and when Defendant ensures service animal law is correctly applied.

## CAUSES OF ACTION

20. Plaintiff brings a cause of action pursuant to 42 U.S.C. § 12182(a) and 42 U.S.C. § 12182(a)(2)(A)(ii) based on the Defendant's denial of his full and equal enjoyment of its goods, services, and facilities because of his disability for which he is benefitted by the use of a service animal. Specifically Defendant refused to make the reasonable modification to its animal policy by permitting the Plaintiff's service animal in its office.

21. Plaintiff also brings a cause of action for violation of Hawaii Revised Statutes § 489-3 based on the Defendant's denying him full and equal enjoyment of its goods, services, and facilities because of his disability for which he is benefitted by use of a service animal.

Specifically Defendant refused to permit his dog to be in its office although his dog is an animal trained to perform tasks ameliorating several of his disabling conditions.

## RELIEF SOUGHT

22. Plaintiff seeks both legal and equitable relief.
23. Pursuant to 42 U.S.C. § 12188(a)(1) the plaintiff seeks an injunction requiring the defendants to train their employees interacting with the public as part of their job duties on the correct protocol for service animals.
24. Pursuant to Hawaii Revised Statutes § 489-7.5(a)(2) the plaintiff seeks an injunction requiring the defendants to train their employees interacting with the public as part of their job duties on the correct protocol for service animals.
25. Pursuant to Hawaii Revised Statutes § 489-7.5(a)(1) the plaintiff seeks damages three times the amount of damages to be shown at trial.
26. Pursuant to 42 U.S.C. § 12205 the plaintiff seeks all his reasonable attorney's fees and litigation costs.
27. Pursuant to Hawaii Revised Statutes §489-7.5(a)(1) the plaintiff seeks all reasonable attorney's fees and costs of litigation.
28. Plaintiff requests any and all further relief the Court deems justified by the evidence adduced.

DATED: Honolulu, Hawaii, December 28, 2021

/s/ LUNSFORD DOLE PHILLIPS
    Attorney for Plaintiff